## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Danny Huff,                                   Case No. 22-cv-1922 (WMW/ECW)

                    Plaintiff,

v.                                                    **ORDER**

Canterbury Park Holding Corporation,

                    Defendant.

This matter is before the Court on Plaintiff Danny Huff's (Huff) motion for leave to file a second amended complaint, and Defendant Canterbury Park Holding Corporation's (Canterbury) motion to dismiss under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). Huff opposes Canterbury's motion to dismiss, and Canterbury opposes Huff's motion for leave to amend the complaint. For the reasons discussed below, the Court denies Huff's motion for leave to file a second amended complaint, grants Canterbury's motion to dismiss for failure to state a claim and denies as moot Canterbury's motion to dismiss for insufficient service of process.

## BACKGROUND

Huff is a resident of Shakopee, Minnesota, and a citizen of Minnesota. Canterbury is a company doing business in Shakopee, Minnesota. Canterbury employed Huff from March 2012 until Canterbury terminated his employment on March 3, 2022.

Before his termination, Huff was an Assistant Pit Manager and Floor Supervisor. Huff's position required him to "supervis[e] Casino Games employees in the absence of a

Pit Manager or Senior Pit Manager, [complete] projects for the benefit of [Canterbury and] other duties as assigned." In 2015, Huff's responsibilities included tracking employee attendance. Huff's managers approved his working at home to make the attendance tracking system more efficient. Beginning in 2015, Huff had access to his work email while at home. And beginning around 2020, Huff had access to Canterbury's virtual private network while at home. Huff did not tell Canterbury how many hours he spent working on the project, and he was not paid for his time spent working at home on the attendance tracking system. Huff recorded the hours he spent working at home on his personal weekly time logs. Huff worked on other projects for Canterbury while at home. He logged the hours on his personal time log, but he was not being paid for his time working at home. Huff's work schedule gave him two or three hours each week to work on these projects during his shift. Huff spent approximately 1,500 hours working on various projects during his employment with Canterbury. 1,100 hours were spent working on the projects at home without compensation.

Canterbury terminated Huff's employment on March 3, 2022. On March 16, 2022, Huff sent Canterbury a demand letter for unpaid wages under the Minnesota Fair Labor Standards Act. Huff and Canterbury began negotiations over the demand letter. At the end of March 2022, Huff filed a wage claim with the Minnesota Department of Labor and Industry (DLI). DLI closed Huff's claim and informed Huff that DLI would not be taking any action.

Huff and Canterbury entered into an agreement on April 26, 2022, for a payment of $25,500 as a settlement of disputed wages and alleged nonwage damages and penalties.

On April 27, 2022, Huff and Canterbury entered into a separate agreement for a payment of $7,500 as a settlement of alleged nonwage damages and penalties. Each agreement contained a release of all wage-related and employment-related claims against Canterbury, advised Huff that he had the right to consult an attorney prior to signing the agreement, and stated that the agreement superseded any prior agreements. The releases applied to "any and all claims, causes of action, liabilities, damages, costs, attorneys' fees, and demands, known or unknown" that Huff had at the time the agreements were signed against "Canterbury, its affiliates, the past and present officers, directors, agents, shareholders, employees, attorneys, insurers and indemnitors of Canterbury and its affiliates[.]"

Huff filed this lawsuit on August 1, 2022. On August 15, 2022, Huff filed an amended complaint. On September 6, 2022, an executed waiver of service was filed. Huff moved for leave to file a second amended complaint on September 9, 2022. Canterbury moved to dismiss on October 17, 2022.

## ANALYSIS

### I.

Huff seeks the Court's permission to file a second amended complaint to include new facts that he discovered after filing his first amended complaint. Canterbury opposes the motion, arguing that the motion to amend is premature and that the proposed amendments would be futile.

Federal Rule of Civil Procedure 15 requires the court to "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the right to amend a complaint is not "absolute or automatic." *See U.S. ex rel. Lee v. Fairview Health*

*Sys.*, 413 F.3d 748, 749 (8th Cir. 2005).  A party seeking leave to amend must demonstrate that the proposed amendment "would be able to save an otherwise meritless claim." *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016) (quoting *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014)).  A motion to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).  A district court has "broad discretion" when deciding whether to grant leave to amend and may deny a motion to amend the complaint when an amendment would be futile.  *See Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007).  Futility means that the amended complaint could not withstand a motion to dismiss. *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).  To withstand a motion to dismiss, a complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When determining whether a complaint states a plausible claim, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  Courts liberally construe *pro se* litigants' pleadings, but those pleadings must nonetheless satisfy the pleading standards of federal courts. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

A.

Huff argues in support of his motion for leave to amend the complaint that the motion is not dilatory and will not delay the case because he moved to amend before

Canterbury had taken any action in the case. Canterbury contends that the motion is premature because Canterbury believes the entire case should be dismissed. The Court should rule on the motion to dismiss first, Canterbury argues, because a dismissal of the case would render moot Huff's motion for leave to amend the complaint.

A court should decide motions to amend before ruling on any related motions to dismiss. *Pure Country*, 312 F.3d at 956; *Stoebner v. Opportunity Finance, LLC*, 562 B.R. 368, 376 (D. Minn. 2016) (noting that the general rule for a court to consider motions for leave to amend before motions to dismiss may not apply if the movant purposefully delayed filing the motion for leave to amend). In *Pure Country*, the United States Court of Appeals for the Eighth Circuit expressly rejected a similar argument in favor of deciding a motion to dismiss first. 312 F.3d at 956. In that case, the district court granted the defendant's motion to dismiss the original complaint while the plaintiff's motion to amend was pending. The district court then denied the motion to amend as moot. "That approach, as a procedural matter, was plainly erroneous. If anything, [the plaintiff's] motion to amend the complaint rendered moot [the defendant's] motions to dismiss the original complaint." *Id*.

Because the Eighth Circuit directs the district courts to rule on a motion to amend before ruling on a motion to dismiss, Huff's motion to amend his complaint is ripe.

## B.

Huff, through his proposed second amended complaint, seeks to add four defendants. Canterbury opposes the amended complaint, arguing that the claims against the proposed defendants would be futile for various reasons.

Huff seeks to add as defendants Mary O'Brien, Canterbury's outside counsel; Ballard Spahr LLP, the law firm that employs Mary O'Brien; Randall Sampson, Canterbury's President and Chief Executive Officer; and Mary Fleming, Canterbury's Vice President of Human Relations. Huff proposes to assert claims against the defendants in the following way: Unlawful retaliation by Canterbury and all the proposed defendants in violation of FLSA, the Minnesota Fair Labor Standards Act and unspecified state labor laws (proposed claims 5 through 8); unlawful interference with future employment by O'Brien and Ballard Spahr in violation of Minn. Stat. § 179.60 (proposed claims 9 through 11); fraudulent misrepresentation by Canterbury and Ballard Spahr (proposed claim 12); and breach of a third-party contract by Canterbury and Ballard Spahr (proposed claim 13).

1.      FLSA portions of claims 5 through 8

Huff seeks leave to add claims of retaliation in violation of the Fair Labor Standards against O'Brien, Ballard Spahr, Fleming and Sampson. Canterbury opposes the addition of the FLSA claims, arguing that the proposed claims fail to state a claim and, therefore, are futile.

"FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Under FLSA, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" regarding FLSA. 29 U.S.C. § 215(a)(3). The Eighth Circuit

applies the *McDonnell Douglas* framework to claims of retaliatory discharge under FLSA. *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).

The first step of the *McDonnell Douglas* framework requires the plaintiff, in this case, Huff, to plead a *prima facie* case of retaliation. *Yearns v. Koss Constr. Co.*, 964 F.3d 671, 674 (8th Cir. 2020). To establish the *prima facie* case of retaliation, Huff must demonstrate that he "participated in [a] statutorily protected activity, that [his employer] took an adverse employment action against [him], and that there was a causal connection between them." *Id.* at 674-75 (quoting *Grey*, 396 F.3d at 1034-35) (second alteration in the original).

Courts look to the "economic reality of the arrangement" to determine whether an individual functions as the employer of a particular employee. *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005). Factors to consider for the economic realities of the arrangement include the alleged employer's right to control the nature and quality of the plaintiff's work, the alleged employer's ability to hire and fire the plaintiff, and the source of the plaintiff's compensation. *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32-33 (1961)).

For the purpose of establishing a *prima facie* case of retaliation, an employer's action is an adverse employment action if it results in "a tangible change in working conditions that produces a material employment disadvantage." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015). The definition of a material employment disadvantage includes termination, a cut in pay or benefits, and a change that affects an employee's career advancement. *Id.* An employer's action is an adverse employment action "only

when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1058 (8th Cir. 2007).

Canterbury argues that Huff's proposed second amended complaint fails to state a claim against O'Brien and Ballard Spahr because the proposed amended complaint does not allege that O'Brien and Ballard Spahr were Huff's employers in the context of FLSA. The Court agrees. The proposed amended complaint describes O'Brien's actions as Canterbury's attorney negotiating the eventual settlement agreements with Huff. There are no allegations that Canterbury empowered O'Brien to hire or fire Huff, that O'Brien was reviewing the quality of Huff's work product or that O'Brien was the source of Huff's compensation. The only allegations are that O'Brien negotiated on behalf of Canterbury. In fact, O'Brien became involved well after Huff's employment with Canterbury ended. The allegations against Ballard Spahr are even less significant than the allegations against O'Brien. Huff only alleges that Ballard Spahr was aware of the FLSA claims against Canterbury and that Ballard Spahr employed O'Brien. Considering the "economic reality" factors outlined by the Eighth Circuit, there are no allegations that O'Brien or Ballard Spahr were Huff's employers within the meaning of FLSA.

Because Huff's proposed second amended complaint fails to state a claim against O'Brien and Ballard Spahr under FLSA, the Court denies the motion for leave to amend as to these claims against O'Brien and Ballard Spahr.

Canterbury also argues that Huff's proposed second amended complaint fails to state claims against Sampson and Fleming under FLSA. Canterbury contends that Huff

fails to allege any adverse employment action by Sampson or Fleming that was caused by Huff's protected activity. A review of Huff's proposed second amended complaint shows allegations that Fleming was aware of the work Huff did at home, requested projects from Huff and, after Huff's employment ended, Fleming participated in negotiations with Huff regarding his claims. But Huff does not allege that Fleming took any action adverse to Huff, other than opposing Huff in the negotiations. As to Sampson, Huff's proposed second amended complaint alleges that Sampson participated in negotiations with Huff regarding his claims after Huff's employment ended and that Sampson told Huff that Canterbury was prepared to work with the Minnesota Department of Labor and Industry if the parties could not reach an agreement about the disputed wages and penalties.

Nothing in Huff's proposed second amended complaint alleges an adverse employment action that changed Huff's employment conditions for the worse. *See Elnashar*, 484 F.3d at 1058. The allegation that Sampson and Fleming were negotiating against Huff about disputed wage claims does not constitute a material employment disadvantage as required under the law of the Eighth Circuit. Because Huff's proposed second amended complaint fails to state a claim against Fleming and Sampson under the FLSA, the Court denies the motion for leave to amend as to this issue.

2.    Non-FLSA portions of claims 5 through 8 and claims 9 through 13

Huff's proposed second amended complaint seeks to add many claims for alleged violations of tort law and statutes other than the FLSA. Canterbury opposes the addition of the claims, arguing that Huff released these claims.

Ordinarily, a release of legal claims is an affirmative defense for the defendant to raise in an answer to a complaint. Fed. R. Civ. P. 8(c)(1). However, an affirmative defense "can provide the basis for dismissal" for a failure to state a claim if the defense is "apparent on the face of the complaint." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008). When determining if the defense is apparent on the face of the complaint, a court "is limited to the materials properly before it on a motion to dismiss, which may include public record and materials embraced by the complaint." *Id.* A document is embraced by the complaint if the contents of the document form the basis of the plaintiff's claims. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Documents attached to the complaint are also properly before the court on a motion to dismiss. *Owen v. Gen. Motors Corp.*, 533 F.3d 913 (8th Cir. 2008).

Huff's first amended complaint and his proposed second amended complaint include as attachments documents that Huff refers to as "agreements." Huff's first amended complaint and his proposed second amended complaint challenge the validity of the agreements, arguing that Huff did not voluntarily sign the agreements and that the agreements are invalid. In opposition to the motion for leave to amend, Canterbury argues that the proposed amendments are futile because Huff released many of the claims in the agreements.

The Court must determine, as a preliminary matter, whether the agreements are properly before the Court on the motion for leave to amend the complaint. Here, Huff has attached the agreements to the first amended complaint and the proposed second amended complaint. The complaint seeks as relief a declaration from the Court that the agreements

are invalid and unenforceable.  Because Huff attached the agreements as exhibits to his complaint and because the complaint embraces the agreements, the Court concludes that the agreements are part of the record for the motion for leave to amend the complaint.

The addition of Huff's proposed non-FLSA claims would be futile, Canterbury argues, because Huff released "Canterbury, its affiliates, the past and present officers, directors, agents, shareholders, employees, attorneys, insurers and indemnitors of Canterbury and its affiliates" from liability for all claims that existed or may have existed when Huff and Canterbury executed the agreements.  The agreement specified that the release extended to claims arising under tort law, or any federal, state, or local laws or ordinances.

"Public policy favors the enforcement of voluntary settlement agreements containing release language that is unambiguous." *Joe v. First Bank Sys., Inc.*, 202 F.3d 1067, 1070 (8th Cir. 2000).  A release is a contract, interpreted through "ordinary contract principles." *Ulvin v. Nw. Nat'l Life Ins. Co.*, 943 F.2d 862, 866-67 (8th Cir. 1991).  The validity of a release turns on whether the parties entered into the agreement voluntarily and knowingly. *Id.*  When assessing the volition and knowledge of the parties to a release, a court should consider the release's clarity of language, the parties' opportunity to negotiate, and the time available to review the release. *Somora v. Marriott Corp.*, 812 F. Supp. 917, 921 (D. Minn. 1993) (citing *Schmidt v. Smith*, 216 N.W.2d 669, 673-74 (Minn. 1974)).

Huff's complaint reveals that detailed and vigorous negotiations produced the two agreements.  The proposed second amended complaint contains only a single allegation that comes close to suggesting an unwilling agreement.  That allegation is a conclusory

statement that Huff "had no other choice but to enter into the agreements by [Canterbury's] fraud and misrepresentation." But Huff's complaint contains other allegations that undermine his claimed lack of volition. For example, Huff successfully negotiated an earlier payment of some of the settlement money. Huff also had ample time to review the agreements and was informed of his ability to consult an attorney. Indeed, Huff attests to these facts in provisions included in the settlement agreements themselves. The allegations of Huff's proposed second amended complaint demonstrate that the parties entered the agreements knowingly and voluntarily. Therefore, the Court will enforce the agreements between the parties unless Huff can establish a basis for invalidating the agreements.

Huff seeks a declaration from the Court that the agreements are invalid for many reasons. Huff claims fraud in the inducement, omission of facts, misrepresentation, confusion, conflict between the agreements and statutes, insufficient consideration, and overbroad language. The Court analyzes each claim of invalidity.

   i.   *Fraud in the inducement*

To state a claim for fraud in the inducement, a plaintiff must show that there was a false representation by a party of a material fact that could have been known; that the false representation was made with knowledge that it was false or made without regard for its veracity; that the false representation was made with the intention to induce a person to rely on it; that the plaintiff did, in fact, rely on the misrepresentation; and that the plaintiff suffered damage as a result of such reliance. *Hoyt Props. Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007).

Huff alleges that Canterbury made two statements that were false representations. The first statement Huff alleges is that Canterbury allegedly told DLI that the disputed work product was outside the scope of Huff's employment.  But Huff alleges that Canterbury made this statement to DLI during DLI's investigation.  The first amended complaint contains no allegations that Canterbury intended Huff to rely on that statement. The representation regarding whether the disputed work product was outside the scope of Huff's employment does not state a claim because Huff does not allege that the statement was made with the intent that Huff would rely on the statement, nor does Huff allege that he actually relied on the statement.

The second statement Huff alleges is that Canterbury allegedly told Huff that Canterbury would defer to DLI if Huff and Canterbury could not reach an agreement.  Huff alleges that Canterbury made this statement after Canterbury knew DLI had closed the investigation and that Canterbury made the statement to induce Huff to enter the agreements.  Absent from Huff's allegations, however, is any plausible allegation that Canterbury could have known what course of conduct DLI would take in the future.

For this reason, Huff has failed to adequately allege that the agreements are void because of fraud.

### ii.     Omission of facts

Under Minnesota law, a claim of fraudulent concealment has the same elements as other fraud claims *plus* the element "that the defendant had a legal or equitable obligation to communicate facts to a particular person and that person is entitled to the information." *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F.Supp.3d 583, 595 (D. Minn. 2014)

(internal quotations omitted).  As a general rule, "one party to a transaction has no duty to disclose material facts to the other party."  *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014).  But "special circumstances may trigger a duty to disclose material facts," and the Minnesota Supreme Court has identified "three examples of such special circumstances":

> First, a person who has a confidential or fiduciary relationship with the other party to the transaction must disclose material facts. Second, one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party. Third, a person who speaks must say enough to prevent the words communicated from misleading the other party.

*Id.* (citations omitted).  Statements of opinion are not actionable as fraud because opinions are not facts.  *Hoyt*, 736 N.W.2d at 318.

Here, Huff has alleged fraudulent omission only with respect to Canterbury's position on the settlement negotiations.  Specifically, Huff alleges that Canterbury had a duty to disclose which of Huff's claimed wages Canterbury disputed.  Canterbury's perspective on what claimed wages it would be willing to pay Huff is an opinion that is not actionable under fraud, however.  Because Huff does not allege any material facts that Canterbury withheld from Huff, he has not pled fraudulent omission of material facts.

### iii.    *Fraudulent misrepresentation of Department of Labor approval*

Huff alleges that the agreements are invalid because Canterbury misrepresented to him whether the Department of Labor was required to approve the agreements.  Canterbury argues that Huff's allegations preclude his argument that he detrimentally relied on Canterbury's representations.

A plaintiff must establish actual and reasonable reliance in order to state a claim for fraudulent misrepresentation. *Hoyt*, 736 N.W.2d at 320-21. Actual reliance requires the plaintiff to show that the plaintiff "took action or failed to take action[] that [the plaintiff] would not have [taken] otherwise." *Greeley v. Fairview Health Services*, 479 F.3d 612, 614-15 (8th Cir. 2007).

Huff's allegations reveal that Huff wanted to remove the language requiring Department of Labor approval because he wanted to get paid the settlement money sooner. Huff cannot establish reliance on Canterbury's representations about Department of Labor approval because Huff initiated the discussion about removing the language. The Court concludes that Huff cannot establish fraudulent misrepresentation by Canterbury because Huff does not allege that he changed his conduct in response to any of Canterbury's statements.

### iv.    Integration of the Agreements

Huff alleges that the second agreement the parties executed integrated the first agreement, nullifying the first agreement. Canterbury disagrees, arguing that the two agreements covered different matters and the integration clauses of the agreements do not conflict. Further, Canterbury argues that the releases in both agreements covered all of the claims Huff now asserts and integration, therefore, is irrelevant.

Under Minnesota law, a contract discharges prior agreements that are "within the scope of the contract." *Core and Main, LP v. McCabe*, 62 F.4th 414, 420 (8th Cir. 2023). "The crucial issue in determining whether there has been an integration is whether the

parties intended their writing to serve as the exclusive embodiment of their agreement."
*Id.*

Huff does not allege any facts that are inconsistent with his intent to agree to an integration clause.  Huff alleges that an integration clause "would create confusion for the average person," and that he believes the second agreement's integration clause nullified the first agreement.  Huff does not allege that he was confused by the clause or that he was unaware of the language at the time he signed the agreements.  Because the proposed second amended complaint does not sufficiently allege that the integration clause should invalidate the agreements, the Court rejects this argument.

     v.     *Older Workers Benefit Protection Act*

Huff alleges that the agreements do not satisfy the Older Workers Benefit Protection Act (OWBPA).  Canterbury argues that the agreements satisfy the OWBPA and that, because Huff does not allege age discrimination, whether the OWBPA is satisfied by the agreements is irrelevant.

The OWBPA amended the Age Discrimination in Employment Act (ADEA) to provide that a waiver of rights under the ADEA is not enforceable unless, among other requirements, the waiver is "in exchange for consideration in addition to anything of value to which the individual already is entitled."  29 U.S.C. § 626(f)(1)(D).  "An employee may not waive an ADEA claim unless the employer complies with the statute."  *Oubre v. Entergy Operations., Inc.*, 522 U.S. 422, 427 (1998).

The provisions of the ADEA generally and the OWBPA specifically are not at issue in this case because Huff does not allege a violation of the ADEA. Huff's argument, therefore, is unavailing.

### vi.    Legally Protected Rights and Claims

Huff seeks to invalidate the agreements because they allegedly infringe his right to make reports to governmental authorities. Canterbury disagrees, arguing that the agreements specifically exempt reports to governmental bodies for lawful purposes.

Huff's allegations are superficial and are unsupported by any plausible facts. The text of the agreements is clear that the agreements do not prohibit "reporting possible violations of law or regulation to a government agency or attorney . . . ." Huff's proposed second amended complaint does not sufficiently allege that the agreements infringe any of Huff's rights.

### vii.    Consideration

Huff argues that the consideration he received was inadequate. Canterbury disagrees. To state a claim for insufficient consideration a plaintiff must show the absence of "any exchange that has value under the law." *Kremer v. Kremer*, 912 N.W.2d 617, 627 (Minn. 2018). Huff does not allege the absence of a valuable exchange. Instead he alleges that he received value—simply not as much as he now wants to extract from Canterbury. This allegation, however, fails to state a claim for insufficient consideration. The Court, therefore, rejects it.

*viii.    Use of Huff's Wages*

Huff next argues that Canterbury, through the negotiations, "defrauded" him out of the wages he believes he was owed.  Canterbury contends that the allegations in the proposed second amended complaint contradict this claim.

A court will enforce a settlement agreement if the parties had the opportunity to negotiate and review the agreement's terms.  *Somora*, 812 F. Supp. at 921.  Huff and Canterbury's extensive negotiations led to the two agreements that Huff attached to his proposed second amended complaint.  The allegations in Huff's proposed second amended complaint do not plausibly allege that Huff lacked knowledge or volition when he entered the agreements.  Huff cannot escape the agreements now just because he believes he could have resolved the dispute on more favorable terms.  *See Samora*, 812 F. Supp. at 921 (absent extraordinary circumstances, a release is not to be set aside merely because a party does not appreciate the legal effects of such release).  For these reasons, Huff's argument fails.

*ix.    Unexecutable Conditions*

Huff's final argument to be excused from the release agreements also is inadequate. Huff contends that the agreements require him to take actions he cannot take—namely, the obligation to return property to Canterbury and Huff's permanent exclusion from Canterbury's property.

"Minnesota public policy favors the freedom of contract and parties can contract to settle any claim . . . ."  *Mackey v. Johnson*, 868 F.3d 726, 729-30 (8th Cir. 2017) (citation omitted).  "Parties are free to contract to whatever terms they agree, provided that those

terms are not prohibited by law." *Persigehl v. Ridgebrook Invs. Ltd. P'ship*, 858 N.W.2d 824, 832 (Minn. App. 2015).

The first section to which Huff objects requires Huff to return Canterbury's property to Canterbury. Huff argues that this section "violates [Huff's] legal rights to retain information that [Canterbury] does not own or have a claim to." The second section to which Huff objects permanently excludes Huff from Canterbury's property. Huff contends that he could not be permanently excluded from Canterbury's property because he was already temporarily excluded from the property for 30 days. But Huff alleges no facts to support his conclusory statements that these two sections are unenforceable. Absent any plausible allegations that terms of the contract are unenforceable, Huff and Canterbury are free to enter into any contract they wish. *See Persigehl*, 858 N.W.2d at 832. Because Huff does not plausibly allege a claim pertaining to the return-of-property section and the permanent-exclusion section of the agreements, the Court rejects this argument.

As Huff has not plausibly alleged invalidity of the agreements, the Court concludes that the releases apply to all of Huff's non-FLSA proposed claims. Because Huff validly released all his non-FLSA claims against Canterbury and the proposed Defendants, the Court denies Huff's motion for leave to amend his complaint to add the non-FLSA claims.

The Court denies the motion for leave to amend in its entirety because all the amendments in Huff's proposed second amended complaint would be futile.

## II.

Canterbury moves to dismiss the complaint, arguing that Huff released his non-FLSA claims when he signed the agreements. Huff contends that the releases are void

because there are several defects in the formation of the agreements. Canterbury responds that none of the alleged defects void the releases. Canterbury also moves to dismiss the FLSA claims, arguing that, even if those claims are not properly released, the complaint fails to state a claim for relief.

A complaint must allege sufficient facts such that, when accepted as true, the complaint states a facially plausible claim to relief. *Iqbal*, 556 U.S. at 678. A complaint that fails to state a claim on which relief can be granted warrants dismissal. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship*, 601 F.3d at 853. Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. And the court may disregard legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 679.

A court must decide a motion to dismiss based on the contents of the complaint. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). However, a court may consider documents that are necessarily embraced by the complaint, documents attached to the complaint, and matters of public record. *Id.* A contract that establishes the basis of a claim in the present suit is embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)).

A release of legal claims ordinarily is an affirmative defense for the defendant to raise in an answer. Fed. R. Civ. P. 8(c)(1). However, an affirmative defense "can provide the basis for dismissal" for a failure to state a claim if the defense is "apparent on the face of the complaint." *Noble Sys. Corp.*, 543 F.3d at 983. When determining if the defense is apparent on the face of the complaint, a court "is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint." *Id.*

A.

Huff's first amended complaint includes as attachments documents that Huff refers to as "agreements." The first amended complaint seeks as relief a declaration from the Court that the agreements are invalid and unenforceable. Because the agreements are embraced by the complaint and they are attached to the complaint as exhibits, the agreements are properly before the Court on the motion to dismiss.

The Court next considers whether the releases are valid and enforceable as to the claims against Canterbury. As addressed earlier, the releases do not apply to Huff's FLSA claims because "FLSA rights cannot be abridged by contract or otherwise waived" without following the procedures outlined in the statute. *Barrentine*, 450 U.S. at 740. Therefore, the releases, if they are valid, apply only to Huff's non-FLSA claims. As a release is a contract, its validity depends on whether the parties entered into the agreement voluntarily and knowingly. *Ulvin*, 943 F.2d at 866-67. The release's clarity of language, the opportunity to negotiate, and the time available for review are considered when making this determination. *Schmidt v. Smith*, 216 N.W.2d at 673-74. Under Minnesota law, a

release of legal claims is presumed to be valid, unless the party seeking to avoid the release shows that the party did not intend to enter the release or did not receive sufficient consideration. *Sorenson v. Coast-to-Coast Stores (Cent. Org.), Inc.*, 353 N.W.2d 666, 669 (Minn. Ct. App. 1984).

As explained earlier in this Order, Huff makes numerous arguments attacking the enforceability of the agreements, but none of the arguments prevails. The same is true in the context of the motion to dismiss. Because the release of liability for the non-FLSA claims is apparent on the face of the complaint, the Court grants Canterbury's motion to dismiss for failure to state a claim as to the non-FLSA claims.

B.

Canterbury argues that the FLSA claims should be dismissed because, even if they are not properly waived by the releases, Huff has not adequately pled claims under the FLSA. Huff contends that, given the liberal pleading standard, he has adequately pled his claims.

Under the FLSA, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" regarding the FLSA. 29 U.S.C. § 215(a)(3). The *McDonnell Douglas* framework applies to claims of retaliatory discharge under the FLSA in the Eighth Circuit. *Grey*, 396 F.3d at 1034. The plaintiff, to establish the *prima facie* case of retaliation under the *McDonnell Douglas* framework, must demonstrate that the plaintiff "participated in [a] statutorily protected activity, that [the employer] took an adverse employment action against [the plaintiff], and that there was a causal connection

22

between them." *Yearns*, 964 F.3d at 674-75 (quoting *Grey*, 396 F.3d at 1034-35) (second alteration in the original).

An employer's action is "an adverse employment action" if it results in "a tangible change in working conditions that produces a material employment disadvantage." *Wagner*, 779 F.3d at 766. Material employment disadvantage includes termination, cuts in pay or benefits, and changes that affect an employee's career advancement. *Id.* An employer's action is an adverse employment action "only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse." *Elnashar*, 484 F.3d at 1058. An employer's action taken with the consent of the employee, including through a settlement agreement, is not an adverse employment actions. *Bissada v. Arkansas Children's Hosp.*, 639 F.3d 825, 831 (8th Cir. 2011).

An employee must plead that the employer's retaliatory motive played a part in the adverse employment action. *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893 (8th Cir. 2002). An employee can plead the required causal connection by alleging that the adverse employment action followed the protected activity "so closely in time as to justify an inference of retaliatory motive." *Rath v. Selection Rsch., Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992).

The parties agree that Huff's demand for allegedly unpaid wages was a protected activity under the FLSA. Canterbury argues that Huff does not allege an adverse employment action and that, even if Huff does allege an adverse employment action, he fails to allege a causal connection between the adverse employment action and his protected activity. Huff argues that he has adequately pled this claim. Huff alleges three

adverse employment actions by Canterbury: the permanent exclusion of Huff from Canterbury's premises, Canterbury's failure to rehire Huff and Canterbury's alleged withholding of wages.

Huff alleges that the agreements' permanent-exclusion provisions retaliate against him.  However, because Huff agreed to these provisions as part of the detailed settlement negotiations, he cannot now claim that the provisions are retaliatory.  *See Bissada*, 639 F.3d at 831.  Therefore, Huff has failed to state a claim as to this allegation of retaliation.

Huff alleges that Canterbury failed to rehire him.  But nothing in the amended complaint alleges that Huff applied for a position with Canterbury after he was terminated. Canterbury did not take any action that materially disadvantaged Huff in this respect.  *See Elnashar*, 484 F.3d at 1058.  Therefore, Huff has failed to state a claim as to his allegation of a failure to rehire.

Huff also alleges that Canterbury withheld wages in retaliation for Huff's wage complaint.  But Huff's allegations establish that Huff filed his wage complaint with Canterbury precisely because Canterbury allegedly withheld wages from Huff.  The alleged adverse employment action, which was the withholding of wages, actually preceded the alleged protected activity, which was Huff's wage complaint.  Huff does not allege that the protected activity caused the adverse employment action, nor could he because the adverse employment action occurred before the protected activity.  *See Rath*, 978 F.2d at 1090 ("The requisite causal connection may be proved circumstantially by proof that the [adverse employment action] followed the protected activity so closely in

time as to justify an inference of retaliatory motive.")  Therefore, Huff has failed to state a claim for retaliation based on withholding his wages.

In summary, Huff's first amended complaint fails to state a claim because Huff released his non-FLSA claims through the settlement agreements and he has failed to allege the elements of a violation of the FLSA.  Therefore, the Court grants Canterbury's motion to dismiss the first amended complaint for a failure to state a claim on which relief can be granted.

## C.

Canterbury asks the Court to approve the agreements' release of FLSA claims now that the agreements are the subject of litigation.  Huff opposes the approval of the agreements, arguing that after-the-fact approval is contrary to the statute.

The Eighth Circuit has not decided whether judicial approval is required for all FLSA settlements.  *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019).  The Eighth Circuit, however, has "acknowledged a split among the circuits over whether judicial approval is required for all FLSA settlements."  *Vines v. Welspun Pipes, Inc.*, 9 F.4th 849, 853 (8th Cir. 2021).  The United States Court of Appeals for the Fifth Circuit would not require judicial approval of all FLSA settlements.  *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012).  But the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Eleventh Circuit would both require judicial approval of all FLSA settlements.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

In both *Barbee* and *Vines*, the Eighth Circuit addressed the narrow issue of attorneys' fees settlements related to FLSA claims, not the settlement of the underlying FLSA claims. *See Barbee*, 927 F.3d at 1027; *Vines*, 9 F.4th at 853. The reasoning in both cases suggests that, while the Eighth Circuit might not require court approval of attorneys' fees settlements, the Eighth Circuit might require court approval of the settlement of the underlying FLSA claims. *Vines*, 9 F.4th at 853 ("So long as 'the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement.'") (quoting *Barbee*, 927 F.3d at 1027).

Canterbury argues that, because there is no controlling law that requires the approval of the settlement of FLSA claims, the Court should enforce the release of the FLSA claims. And even if judicial approval is required, Canterbury contends, the Court should "exercise its broad equitable powers [to] approve the settlement now that Huff has availed himself of the courts." Huff opposes Canterbury's request for ratification of the settlement.

Because Huff has failed to state a claim for relief under the FLSA, the Court declines to address this issue.

### III.

The First Amended Complaint should be dismissed, Canterbury argues, because Huff never served the First Amended Complaint on Canterbury. Huff offers no argument in response to Canterbury's motion to dismiss for lack of service.

Absent service of process or waiver of the same, "a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *see also* Fed. R. Civ. P. 12(b)(5). A party asserting insufficient service of process must make a motion asserting this defense "before pleading if responsive pleading is allowed." Fed. R. Civ. P. 12(b). To succeed on a motion to dismiss for insufficient service of process, the plaintiff must establish by prima facie evidence that service was, indeed, proper. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). Dismissal is not invariably required when service is ineffective. Under such circumstances, the district court may either dismiss the action or order the party to cure the defect in service. *Marshall v. Warwick*, 155 F.3d 1027, 1032 (8th Cir. 1998). The Court reviews a motion to dismiss for insufficient service of process in the light most favorable to the plaintiff. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).

Courts in this District have reached different conclusions as to whether a plaintiff's failure to oppose a motion to dismiss warrants dismissal. *Compare Li v. New Asia Chinese Restaurant Wan Da, Inc.*, No. 22-CV-1665 (WMW/JFD), 2023 WL 146200, *1 (D. Minn. Jan. 10, 2023) (lack of opposition to a motion to dismiss "does not relieve the district court of the obligation to examine" the basis for dismissal) *with Espey v. Nationstar Mortg., LLC,* No. 13-CV-2979 (ADM/JSM), 2014 WL 2818657, *11 (D. Minn. June 19, 2014) ("Plaintiff's failure to respond [to an argument in support of dismissal] amounts to a waiver, and on that basis alone defendant's motion to dismiss . . . should be granted") *and*

*Christensen v. PennyMac Loan Servs, LLC*, 988 F. Supp. 2d 1036, 1042 (D. Minn. 2013) (same).

In this case, neither party has addressed the waiver of service Huff filed on September 6, 2022.  It is Huff's responsibility to establish proper service in response to Canterbury's motion to dismiss, and the Court will not make arguments on behalf of any party—even a *pro se* litigant.  *See Stone*, 364 F.3d 912, 914 (8th Cir. 2004).

Canterbury insists that it is aware of the amended complaint only because it has access to the electronic docket.  But, Canterbury has not argued that it has been inconvenienced or prejudiced by the lack of service.  Indeed, the docket reflects that Canterbury's attorneys have proactively engaged in this litigation.

Regardless of Canterbury's arguments of insufficient service of process, the Court does not reach this basis for the motion to dismiss.  As addressed above, Huff's first amended complaint fails to state a claim and, therefore, will be dismissed.  Because the matter will be dismissed, the Court denies as moot Canterbury's motion to dismiss for insufficient service of process.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.   Plaintiff Danny Huff's Motion to Amend Pleadings, (Dkt. 11), is **DENIED**.

2.   Defendant Canterbury Park Holding Corporation's Motion to Dismiss, (Dkt. 22), is **GRANTED in part and DENIED in part**, as follows:

   a.   The motion to dismiss for failure to state a claim is **GRANTED**.

      b.     The motion to dismiss for insufficient service of process is **DENIED as moot**.

3.     Plaintiff Danny Huff's First Amended Complaint, (Dkt. 7), is **DISMISSED without prejudice**.

LET JUDGMENT BE ENTERED ACCORDINGLY

Dated: September 22, 2023          <u>s/Wilhelmina M. Wright</u>
                                     Wilhelmina M. Wright
                                     United States District Judge